UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CATHERINE ANTUNES,        *Plaintiff*, | CASE NO. 3:21-CV-00042 |
| v. | MEMORANDUM OPINION |
| RECTOR & VISITORS OF THE UNIV. OF VA., *et al.*,        *Defendants*. | JUDGE NORMAN K. MOON |

    Plaintiff began working as a nurse at the University of Virginia ("UVA") in 2020. According to Plaintiff's Third Amended Complaint, in late 2021, the University required health-care employees to provide proof of vaccination for COVID-19. When Plaintiff failed to provide proof of vaccination and had not submitted a request for a religious or medical exception, the University suspended her and later terminated her employment. Plaintiff filed suit against the Federal Food and Drug Administration ("FDA") and the Department of Health and Human Services ("HHS") and their officials, and UVA, alleging violations of her constitutional rights and wrongful termination of employment.

    Plaintiff's suit will be dismissed in its entirety. Plaintiff's claims against Federal Defendants will be dismissed for lack of standing. Plaintiff's claims against the UVA Defendants will be dismissed for failure to state a claim.

## I.  Background

    The following facts are alleged in Plaintiff's Third Amended Complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)

(reiterating the appropriate standard of review). Plaintiff Catherine Antunes, a nurse with thirteen years of experience in healthcare and six years of experience as a nurse, began employment within the UVA healthcare system in January 2020. Dkt. 40 ("Third Amend. Compl.") ¶¶ 1, 10, 30. At her most recent evaluation (6/30/2021), UVA Health management rated her work as "fully meets expectations," in addition to describing her as "an exceptional asset to the team" who possesses "astute clinical skills" and "natural leadership ability." *Id.* ¶ 1.

On March 27, 2020, then-Secretary of the U.S. Department of Health and Human Services ("HHS") Alex Azar II issued a declaration (*Declaration that Circumstances Exist Justifying Authorizations Pursuant to Section 564 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3*). *Id.* ¶ 24. This declaration stated that, on February 4, 2020, Secretary Azar determined, in relation to the novel coronavirus, that "[p]ursuant to section 564 of the Federal Food, Drug, and Cosmetic (FD&C) Act there is a significant potential for a public health emergency that has a significant potential to affect national security or the health and security of United States citizens living abroad." *Id.* Pursuant to Secretary Azar's March 27 declaration, on December 11, 2020, the U.S. Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the "BioNTech" vaccine manufactured by pharmaceutical company Pfizer to prevent COVID-19's spread. *Id.* ¶ 26. The FDA similarly issued an EUA for Moderna's vaccine on December 18, 2020, *id.* ¶ 27, and Janssen (Johnson and Johnson)'s vaccine on February 27, 2021. *Id.* ¶ 28.

On August 23, 2021, the FDA fully approved Pfizer's vaccine ("Comirnaty"), additionally noting Comirnaty as "legally distinct" with "certain differences" from Pfizer's BioNTech vaccine. *Id.* ¶¶ 33–34; *id.* (Ex. G). At the time in which Plaintiff filed her Third Amended Complaint, Spikevax (manufactured by Moderna), was the only other vaccine that received full

approval from the FDA, which it received January 31, 2022. *Id.* ¶ 42.

On August 25, 2021, UVA executives, via an organization-wide email, announced: "[W]e . . . will now require all team members without a religious or medical exemption to be vaccinated against COVID-19 by November 1, 2021," going on to say, "[a]ny team member not meeting the vaccination requirement deadline will be subject to disciplinary action up to and including termination." *Id.* ¶ 36; *id.* (Ex. H). In September 2021, UVA expressed a belief that the legality of this mandate was "unclear." *Id.* ¶ 37, *id.* (Ex. I).

Following Comirnaty's full approval by the FDA, Plaintiff Antunes, on August 29, 2021, began emailing an account set up by UVA to field COVID-19 vaccine-related questions. *Id.* ¶ 37. In this email exchange, the account administrator "informed Ms. Antunes that UVA was not offering the vaccine that had received full FDA approval, 'Comirnaty,' to its employees because it was not available to UVA, and that UVA would make the Comirnaty available to them when they were able to acquire it." *Id.* ¶ 38; *id.* (Ex. J).

Plaintiff Antunes, at the time in which she filed her Third Amended Complaint, had not received any COVID-19 vaccines and had no plans to receive any vaccines, though she has no categorical objection to vaccines. *Id.* ¶¶ 44–45. On November 1, 2021, UVA informed Plaintiff Antunes that, beginning on November 2, 2021, UVA Health would suspend her for a five-day period, pending verification that she received a COVID-19 vaccine. *Id.* ¶ 47. On November 9, 2021, UVA terminated Plaintiff's employment. *Id.* ¶ 48. Unlike Plaintiff, many with religious and/or medical exemptions to UVA Health's vaccine mandate continue to work at UVA Health. *Id.* ¶¶ 49–50.

## II.     Legal Standard

When a party attacks the subject matter jurisdiction of the Court under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)). Where, as here, a defendant challenges the sufficiency of a plaintiff's allegations to establish subject matter jurisdiction, the court must accept the truth of the plaintiff's allegations at this stage, but still, it is the plaintiff's burden to establish that the allegations are sufficient to support subject matter jurisdiction. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Second, to survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

### III.   Analysis

**A. Claims Against Federal Defendants Should Be Dismissed Pursuant to 12(b)(1) Due to Lack of Subject Matter Jurisdiction**

**i.   Lack of Standing**

Plaintiff alleges that Federal Defendants[1] violated the Food, Drug, and Cosmetic Act ("FDCA") and the Equal Protection Clause, Third Amend. Compl. ¶¶ 51–59, 63–65, 67–68, and she seeks a declaration holding Federal Defendants' challenged conduct unlawful, *id.* p. 16. She asserts that Federal Defendants violated the FDCA by (1) failing to indicate that the COVID-19 pandemic, which HHS declared a public emergency, "involved a biological, chemical, radiological, or nuclear agent or agents or a disease or condition that may be attributable to such agent or agents," *id.* ¶¶ 51–54, and (2) failing to ensure vaccine distribution according to the FDCA's "required conditions section," *id.* ¶¶ 55–59. She asserts that Federal Defendants violated the Equal Protection Clause due to the HHS setting up a discriminatory framework for COVID-19 vaccine distribution, *id.* ¶¶ 63–65, 67–68. Plaintiff lacks standing to bring such claims against Federal Defendants.

Standing is a threshold jurisdictional injury, and to establish standing, a plaintiff must demonstrate that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable decision." *Spokeo v. Robbins*, 578 U.S. 330, 338 (2016). Further, a plaintiff must establish standing "for each claim" and "each form of relief," the plaintiff seeks. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Traceability requires "a causal connection between the injury and the conduct complained of

---

[1] Federal Defendants include Xavier Becerra, in his official capacity as Secretary of U.S. Department of Health and Human Services; Janet Woodcock, in her official capacity as Acting Commissioner of the Food and Drug Administration; the U.S. Department of Health and Human Services; and the Food and Drug Administration.

– the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Various courts have held that an employer's vaccination policy is not fairly traceable to the federal government's decision to authorize vaccine marketing. *See Davis v. Biden*, No. ADC-21-2904, 2022 WL 2343966, at *2 (D. Md. June 29, 2022), *appeal filed*, No. 22-1734 (4th Cir.) ("Moreover, even the argument that Towson University was emboldened and encouraged by guidance from the Centers for Disease Control and Prevention is not enough to show an injury traceable to Defendant [University, alleged to have removed Plaintiff for her failure to comply with its vaccination policy]."); *Children's Health Def. v. FDA*, 573 F. Supp. 3d 1234, 1243 (E.D. Tenn. 2021) ("The [employer's] vaccine mandates, and the potential consequences for refusing those mandates, are not fairly traceable to the specific actions of the FDA."); *Null v. FDA*, No. cv 09-1924, 2009 WL 10744069, at *3 (D.D.C. Nov. 10, 2009) ("[S]tate action [in requiring healthcare workers to be vaccinated] cannot be attributed to the federal government merely because the federal government had some role in authorizing a decision independently taken by the state."); *Perez v. Becerra*, No. 1:21-cv-02039, 2022 WL 1102203, at *4 (D.D.C. Apr. 13, 2022) ("Vaccine requirements, mask mandates, and vaccine passports are typically managed at the local and state level. The [Plaintiffs] thus cannot trace these requirements to the Department [of Health and Human Services]."); *see also Disability Rights South Carolina v. McMaster*, 24 F.4th 893, 901–03 (2022) (finding parents of students with disabilities who attend South Carolina public schools and two disability advocacy organizations that challenged a provision in the South Carolina state budget prohibiting school districts from using appropriated funds to impose mask mandates lacked standing to sue, in part due to lack of traceability).

Additionally, a plaintiff bears the burden of establishing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted), and "[t]o determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). Redressability is "'substantially more difficult' to establish" when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*." *Lujan*, 504 U.S. at 662 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)) (emphasis in original). The District Court for the District of Columbia, for example, has recognized in a vaccine mandate context with plaintiffs seeking similar relief from federal defendants that "the Court could grant the relief the [Plaintiffs] seek and [their home state] could implement its own requirements for vaccines, masks, and vaccine passports." *Perez*, 2022 WL 1102204, at *4. The Court concluded that "the relief the [Plaintiffs] seek does not redress their alleged injuries." *Id.*

Plaintiff Antunes alleges injury based on UVA Health's suspension and subsequent termination of her employment. Third Amend. Compl. ¶¶ 47–48. She does not offer any allegations that Federal Defendants participated in UVA Health's decision to suspend or terminate her or that they have authority to direct UVA Health to rehire Plaintiff. Nor does she allege she would seek to regain her position if claims against the Federal Defendants succeed. She alleges that 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) includes the condition that the HHS Secretary

> ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

Third. Amend. Compl. ¶ 55. She further alleges of this statutory provision: "[t]he presence of

language referring to a choice set alongside the obligation upon the Secretary to ensure that the choice exists would be an absurdity." *Id.* ¶ 58. Yet, her argument that "[t]he statute binds the Secretary to inform the users of the option to refuse the product, but also to ensure that that option actually exists," is conclusory. *Id.* ¶ 56. Without non-conclusory factual allegations supporting Federal Defendants' role in her injury, her suspension and termination are not fairly traceable to the Federal Defendants.

Plaintiff seeks a declaration holding Federal Defendants' challenged conduct unlawful, but such relief would not redress her alleged injury. She has failed to allege any facts that such a declaration would (1) redress her injury by causing UVA Health to re-hire plaintiff or (2) prevent UVA Health from maintaining its vaccination policy in the future. *See, e.g.*, *Scenic Am., Inc. v. United States Dep't of Transp.*, 836 F.3d 42, 52 (D.C. Cir. 2016) (holding that invalidating federal guidance regarding digital billboards would fail to redress any injury such billboards cause, as states would still be free to construct them, and a plaintiff's supposition that states would stop doing so was speculative). Thus, Plaintiff's claims against Federal Defendants fail for lack of standing.

### ii.   No Waiver of Sovereign Immunity

Plaintiff's claims against Federal Defendants also lack subject matter jurisdiction because there has been no waiver of sovereign immunity.

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). A waiver of sovereign immunity "must be unequivocally expressed."

*Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). Sovereign immunity generally extends to federal officers sued in their official capacity. *Dugan v. Rank*, 372 U.S. 609, 620–22 (1963); *Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983). And the plaintiff has the burden to demonstrate a waiver of sovereign immunity. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

The Administrative Procedure Act ("APA") provides a limited waiver of sovereign immunity but exempts "agency action [that] is committed to agency discretion by law," from judicial review. 5 U.S.C. § 701(a)(2); *see Angelex Ltd. v. United States*, 723 F.3d 500, 506 (4th Cir. 2013) (discussing that the district court lacked subject matter jurisdiction when agency action fell within the 5 U.S.C. § 701(a)(2) exception).

Plain statutory language dictates that the HHS' vaccine emergency use authorization is "committed to agency discretion." 21 U.S.C. §260bbb03(i) ("Actions under the authority of this section by the Secretary, by the Secretary of Defense, or by the Secretary of Homeland Security are committed to agency discretion."). Courts have consequently recognized decisions regarding emergency use authorization for vaccines as expressly reserved by statute to agency discretion. *Ass'n of Am. Physicians & Surgeons v. FDA*, No. 20-1784, 2020 WL 5745974, at *3 (6th Cir. Sept. 24, 2020) ("[E]mergency-use authorizations are exempt from review under the APA."); *Wise v. Inslee*, No. 2:21-cv-0288, 2022 WL 1243662, at *2 (E.D. Wash. Apr. 27, 2022), *appeal filed*, No. 22-35426 (9th Cir.); *Doe #1-#14 v. Austin*, 572 F. Supp. 3d 1224, 1237–38 (N.D. Fla. 2021); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (internal references omitted).

Though Plaintiff also refers to other statutes in her Third Amended Complaint, no statute

referenced waives sovereign immunity. By its own terms, 42 U.S.C. § 1983 "is of only limited scope" and "does not reach . . . actions of the Federal Government." *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973). The general federal question statute, 28 U.S.C. § 1331, "is not a general waiver of sovereign immunity." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996). The same holds true for the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, *Circuit City Stores, Inc. v. EEOC*, 75 F. Supp. 2d 491, 504 (E.D. Va. 1999), *aff'd*, 232 F.3d 887 (4th Cir. 2000), and the general jurisdictional provision related to civil rights, 28 U.S.C. § 1343. *Randall*, 95 F.3d at 345 (holding that a jurisdictional statute "merely establishes a subject matter that is within the competence of federal courts to entertain") (internal reference omitted); *Radin v. United States*, 699 F.2d 681, 685 n.9 (4th Cir. 1983) (presenting a jurisdictional statute as "merely a jurisdictional grant that in no way affects the sovereign immunity of the United States"); *Jachetta v. United States*, 653 F.3d 898, 907–08 (9th Cir. 2011); *Perkins v. Comm'r*, No. 20-cv-3142, 2020 WL 6544834, at *3 (D. Md. Nov. 6, 2020). Further, the statute authorizing vaccine emergency use, 21 U.S.C. § 360bbb-3, lacks any unequivocal expression of a waiver of immunity, thus failing to meet the *Mitchell* standard presented above. *Mitchell*, 445 U.S. at 538. The same reasoning makes Plaintiff's mention of unspecified "nonstatutory equitable jurisdiction," Third Amend. Compl. ¶ 5, unavailing in terms of conveying jurisdiction. Thus, as there has been no waiver of Federal Defendants' sovereign immunity, Plaintiff's claims against Federal Defendants must be dismissed.

    **B. Claims Against UVA Should Be Dismissed Pursuant to 12(b)(6) for Failure to State a Claim**

        **i. Plaintiff Fails to Allege Facts Supporting That UVA Violated the Equal Protection Clause**

Plaintiff alleges that UVA violated the Equal Protection Clause when the institution decided to require employees to receive a COVID-19 vaccination, asserting that UVA "was able to do so because HHS has set up a discriminatory framework for the administration of the vaccines." Third Amend. Compl. ¶ 63. She alleges that "[i]n the context of the vaccines in question, HHS has created two similarly situated classes of people, one with more protections against coercion than the other." *Id.* ¶ 67. Plaintiff bases this on the idea that, under 21 C.F.R. Part 50, "if UVA, while administering a clinical trial on behalf of a pharmaceutical company, ordered its employees to participate or lose their jobs, such a policy would be a clear instance of coercive influence that would constitute a violation of the relevant regulations," and "[a]lthough the FDA issued its Emergency Use Authorization alongside clinical trials that remain ongoing, it acknowledges no such protections against coercion in its administration of . . . that statute that created the EUA." *Id.* ¶¶ 66–67.

"[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose." *Cent. State Univ. v. Am. Ass'n of Univ. Professors, Cent. State Univ. Chapter*, 526 U.S. 124, 127–28 (1999) (citations omitted). Courts within the Fourth Circuit have found that policies treating unvaccinated individuals differently than those vaccinated do not target a suspect class. *Bauer v. Summey*, 568 F. Supp. 3d 573, 597 (D.S.C. 2021) ("Although the Policies treat unvaccinated individuals differently than those vaccinated by only subjecting the former to potential termination, such differential treatment does not target a suspect class."); *McArthur v. Brabrand*, No. 1:21-cv-1435, 2022 WL 2528263, at *7 (E.D. Va. July 27, 2020) ("[H]eightened review is not justified because the quarantine policy . . . is a vaccination-based classification.") (citing

cases holding that unvaccinated people do not constitute a suspect class).

UVA's policy bears a rational relationship to some legitimate end, thus meeting the rational basis standard presented above. The vaccination requirement is related to the government interest in preventing COVID-19 from spreading amongst UVA Health personnel and patients. Thus, Plaintiff's Equal Protection Clause claim against UVA Defendants shall be dismissed.

    ii.    **Plaintiff Fails to Allege Facts Supporting That UVA Violated the Due Process Clause**

Plaintiff alleges that UVA's conduct violates the Fourteenth Amendment by "using economic power to secure 'consent' to an unwanted medical treatment." Third Amend. Compl. ¶ 72. She alleges this based on the U.S. Supreme Court previously recognizing that "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." *Id.* ¶ 70 (quoting *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990)). However, other courts have found similar arguments misplaced in a vaccine mandate context. *E.g.*, *Mass. Correction Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 326 n.5 (D. Mass. 2021) (recognizing the plaintiff's appeal to *Cruzan* as misplaced, since "*Cruzan*'s holding . . . was limited to an individual's choice related to the refusal of lifesaving medical care and nutrition, with no impact on the health of others or the public."); *Bauer*, 568 F. Supp. 3d at 592 n.5 (finding for the same reason that "the caselaw involving the refusal of medical treatment that plaintiffs rely on is inapposite to the instant action."); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) ("In *Cruzan*, a case relied upon by Plaintiffs for the proposition that they have a fundamental constitutional right to refuse medical treatment, the Court expressly recognized its holding in *Jacobson* that 'an individual's liberty interest in declining an unwanted smallpox vaccine' was outweighed by 'the

State's interest in preventing disease.") (internal reference omitted).

Courts apply a deferential standard when considering the constitutionality of vaccination requirements as related to the Due Process Clause. *Jacobson v. Massachusetts*, 197 U.S. 11, 27, 31 (1905) (discussing that the judiciary can review legislation affecting the general welfare, as "if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (presenting the *Jacobson* standard as "essentially . . . rational basis review."); *Antietam Battlefield KOA v. Hogan*, No. 20-311, 2022 WL 1449180, at *2 (4th Cir. May 9, 2022) (affirming the district court's determination that *Jacobson* "provided the proper scope for review of Plaintiff's constitutional claims" regarding the Maryland Governor's COVID-19 orders). Courts across the country have relied on such a standard when facing COVID-19-related vaccination mandates, including in the context of University policies. *See, e.g.*, *Norris v. Stanley*, No. 1:20-cv-756, 2022 WL 247507, at *3 (W.D. Mich. Jan. 21, 2022) (university employment context); *Klaasen v. Trustees of Ind. Univ.*, 7 F.4th 592, 594 (7th Cir. 2021) (university student context); *Children's Health Def., Inc. v. Rutgers State Univ. of New Jersey*, No. CV2115333ZNQTJB, 2021 WL 4398743, at *5–6 (D.N.J. Sept. 27, 2021) (university student context); *Harris v. Univ of Mass., Lowell*, No. 21-cv-11244, 2021 WL 3848012, at *8 (Sept. 27, 2021) (university student context).

To establish a Due Process violation, Plaintiff Antunes must demonstrate that she has "been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Such a claim requires government action that is "so 'arbitrary'

and 'egregious' that it 'shocks the conscience,' usually because a state actor intended harm without justification." *Waybright v. Frederick Cnty., Md.*, 528 F.3d 199, 205 (4th Cir. 2008) (quoting *County of Sacramento*, 523 U.S. 833, 845–46, 849 (1998)).

Plaintiff has not (1) identified any right triggering heightened protection under substantive due process or (2) demonstrated any arbitrary, egregious, and conscience-shocking governmental action. Plaintiff argues only that UVA's vaccine mandate infringes on her right to be free from unwanted medical treatment. Third. Amend. Compl. ¶¶ 70–72. Courts have refused to recognize this as a fundamental right in the vaccine mandate context. *E.g.*, *Lukaszczyk v. Cook Cnty.*, 2022 WL 3714639, at *7–8 (7th Cir. Aug. 29, 2022). Consequently, Plaintiff has not identified a right triggering heightened protection under substantive due process. Further, requiring vaccines for healthcare workers does not demonstrate any arbitrary, conscience-shocking, or oppressive governmental action. Consequently, the *Jacobson* rational basis standard applies. Based on the risk of COVID-19 contagion in a health care setting, a vaccination requirement for healthcare staff is rationally related to the legitimate state interest of preventing the spread of COVID-19. *See, e.g.*, *Norris*, 2022 WL 247507 at *3; *Klaasen*, 7 F.4th at 594; *Children's Health Def., Inc.*, 2021 WL 4398743, at *5–6; *Harris*, 2021 WL 3848012, at *8.

Thus, Plaintiff has failed to state a claim for violation of the Due Process Clause.

### iii. Plaintiff Fails to Allege Facts Supporting That UVA Violated the Fourth Amendment

Plaintiff advances the novel argument that UVA "is using economic coercion to seize and commandeer [Plaintiff's] immune system for its own purposes and has provided very little explanation or justification for its actions," therein violating the Fourth Amendment. Third Amend. Compl. ¶ 75. Plaintiff cites no authority accepting such an argument in a similar context.

To have Fourth Amendment standing, a Plaintiff must show that "the disputed search and seizure has infringed an interest of the [Plaintiff's] which the Fourth Amendment was designed to protect." *Rakas v. Illinois*, 439 U.S. 128, 140 (1978). Even if UVA Health's vaccination mandate qualified as a seizure under the Fourth Amendment, Plaintiff never received a vaccination. Thus, there was no intrusion on her privacy in the form of a warrantless seizure, and Plaintiff lacks standing to raise such a Fourth Amendment claim.

Further, UVA Health's mandate appears not to be a seizure under the Fourth Amendment. A Fourth Amendment seizure of a person can occur via "physical force" or "a show of authority" that "in some way restrain[s] the liberty of" a person. *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968). For reasons outlined above, requiring an at-will employee to receive a vaccination is not a restraint on one's liberty rights under the Fourteenth Amendment. *See also Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1245 (W.D. Okla. 2021) ("Guard members 'are not being coerced to give up a fundamental right since there is no fundamental right to refuse vaccination.' The result is the same with a traditional (and narrower) seizure analysis.") (quoting *Smith v. Biden*, No. 1:21-cv-19457, 2021 WL 5195688, at *8 (D.N.J. Nov. 8, 2021), *appeal filed*, No. 21-3091 (3d Cir.)).

Even if the mandate were deemed a restraint on Plaintiff's liberty, the Fourth Amendment protects only against unreasonable searches and seizures, *e.g.*, *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), and Plaintiff has not alleged any facts indicating that the UVA Health policy would fail to pass a Fourth Amendment reasonableness balancing test. Courts uphold searches and seizures in an array of contexts by "balancing [any] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653–54 (1995). COVID-19 vaccination and testing requirements evidence legitimate government interests. *See, e.g.*, *Roman Cath. Diocese of*

*Brooklyn*, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest."); *Streight v. Pritzker*, No. 3:21-CV-50339, 2021 WL 4306146, at *6 (N.D. Ill. Sept. 22, 2021) (addressing this in a Fourth Amendment context). Plaintiff has alleged no facts, taken as true, that would establish that the vaccination policy intrudes on her Fourth Amendment interests in a manner outweighing UVA Health's promotion of legitimate governmental interests. Thus, Plaintiff has failed to state a claim under the Fourth Amendment.

      iv.      **Plaintiff Fails to Allege Facts Supporting That UVA's Vaccination Requirement Amounts to an Unconstitutional Condition**

Plaintiff alleges that UVA's vaccination requirement is an unconstitutional condition on her "constitutional right to refuse unwanted medical treatment in order to be employed at a public university." Third Amend. Compl. ¶ 3. Under the unconstitutional conditions doctrine, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Again, Plaintiff advances no authority which has accepted such an argument in the context of a COVID-19 requirement.

As outlined above, a state entity acts within its constitutional constraints when directly enacting a vaccination requirement if it has a rational basis to do so.

Further, as Plaintiff Antunes is an at-will employee, no government benefit has been denied. "Where an employee has a property interest in her job, the only protection we have found the Constitution gives her is a right to adequate procedure. And an at-will employee . . . generally has no claim based on the Constitution at all." *Waters v. Churchill*, 511 U.S. 661, 679 (1994) (plurality opinion) (reasoning incorporated by *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 606 (2008)). When considering a case with facts similar to those in the case currently before the Court, the Western District of Michigan recently arrived at such a conclusion. In *Norris v.*

*Stanley*, plaintiffs, current and former employees of Michigan State University, alleged an unconstitutional condition claim based on the university's COVID-19 vaccination requirement. *Norris*, 2022 WL 247507. The court reasoned that "the 'benefit' at issue here is Plaintiffs' employment at MSU, to which they are not constitutionally entitled," and "[b]ecause of the lack of governmental benefit at issue in this matter, the Court finds that Plaintiffs have failed to plead sufficient facts to allege a violation of the unconstitutional conditions doctrine to survive Defendants' motion to dismiss." *Id.* at *4. The same reasoning applies to Plaintiff Antunes' allegation that UVA violated the unconstitutional conditions doctrine, and this claim thus must be dismissed.

### v. Plaintiff Fails to Allege Facts Supporting a Wrongful Discharge Claim Under Virginia Law

Plaintiff alleges that "[b]y insisting on the unwanted touching and physical invasions of a vaccination at the price of her job, UVA has engaged in the wrongful termination of [Plaintiff]" under Virginia law. Third Amend. Compl. ¶ 15.

"Virginia adheres to the common-law rule that when a contract calls for the rendition of services, but the period of its intended duration cannot be determined by a fair inference from its provisions, either party is ordinarily at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate." *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 798, 800 (Va. 1985) (citations omitted); *see also, e.g.*, Hice v. Mazzella Lifting Techs., Inc., No. 2:21-cv-281, 2022 WL 636640, at *8 (E.D. Va. Mar. 4, 2022). However, the common-law rule governing at-will employment termination "is not absolute." *Id.* at 801. Employees "discharged in violation of an established public policy" fall within an exception to the common-law rule, and they may raise a *Bowman* claim for wrongful discharge if within the exception. *Id.*

The Supreme Court of Virginia has recognized three situations in which a discharged employee may show her discharge violated public policy. *Wells v. Enter. Leasing Co. of Norfolk/Richmond, LLC*, 500 F. Supp. 3d 478, 487 (E.D. Va. 2020) (internal citations omitted). First, a litigant may rely on "a statute stating explicitly that it expresses a public policy of the Commonwealth." *Id.* Second, a litigant may rely on a statute "designed to protect the property rights, personal freedoms, health, safety or welfare of the people in general." *Id.* (internal citation omitted). For both the first and second situation, the aggrieved employee must also show that she "is a member of the class of individuals the public policy is intended to benefit." *Id.* (internal citation omitted). Virginia case law makes clear that "[t]he public policy on which a plaintiff must rely to qualify for the first and second *Bowman* exceptions must be expressed in an existing Virginia statute." *Id.* at 487–88 (parenthetically summarizing supporting case law). A *Bowman* claim cannot rely on a federal statute or constitutional provision. *E.g.*, *McCarthy v. Texas Instruments*, 999 F. Supp. 823, 829 (E.D. Va. 1998) ("This effort is facially unavailing, as Title VII, a federal statute, does not provide an expression of Virginia's public policy. A *Bowman* claim must find root in a *state* statute. For this reason, too, a plaintiff's reliance on the Fourteenth Amendment . . . is misplaced.") (internal citation omitted). Third, a *Bowman* claim may be established "where the discharge was based on the employee's refusal to engage in a criminal act." *Id.* (internal citation omitted).

Here, Plaintiff has failed to allege (1) any Virginia state law that qualifies for the first or second *Bowman* exception, or (2) facts supporting any refusal to engage in a criminal act. To support her wrongful termination claim, Plaintiff cites *Cavuoto v. Buchanan Cnty.*, 605 S.E.2d 287, 289 (Va. Ct. App. 2004) (citing *U.S. v. Charters*, 829 F.2d 479 (4th Cir. 1987)) for the principle that Virginia courts have recognized "[t]he right to be free of unwanted physical

invasions . . . as an integral part of the individual's constitutional freedoms." Third Amend. Compl. ¶ 78. She further states: "By insisting on the unwanted touching and physical invasions of a vaccination at the price of her job, UVA has engaged in the wrongful termination of Ms. Antunes." *Id.* ¶ 79. Thus, Plaintiff alleges only a violation of federal constitutional freedoms in support of her wrongful discharge claim, rather than a Virginia statute expressing state public policy. As such, her claim does not fit within a *Bowman* exception to the common-law at-will employment rule. Her wrongful termination charge shall thus be dismissed.

## V. Conclusion

Because Plaintiff lacks standing to sue Federal Defendants, the motion to dismiss as to those Defendants will be granted in an accompanying Order. As Plaintiff's assertions against UVA do not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" the motion to dismiss as to UVA will be granted in an accompanying Order. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

\* \* \* \*

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this  12th  day of September, 2022.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE